GRIFFIN *v.* THE STATE.

No. 14394. FEBRUARY 9, 1943.

*Howard, Camp & Tiller,* for plaintiff in error.

*Ellis G. Arnall, attorney-general, John A. Boykin, solicitor-general, A. J. Hartley, assistant attorney-general, E. A. Stephens, E. E. Andrews,* and *Durwood T. Pye,* contra.

BELL, Presiding Justice.   (After stating the foregoing facts.)

The judge instructed the jury that where the issue of insanity is involved, the burden is on the defendant to show, by a preponderance of the evidence, that at the time of the alleged commission of the act charged against her she was insane. He next defined preponderance of evidence substantially in the language of the Code. In the first special ground of the motion for new trial the movant contended that after giving the "foregoing charge," and in connection therewith, the court should have further instructed the jury to the effect that, on the issue of insanity, circumstantial evidence alone might be sufficient upon which to base a finding that the defendant was insane at the time of the act charged against her.

There is no merit in this ground. It is not insisted that the instructions given were incorrect or inapplicable. "A correct instruction to the jury is not subject to exception for failure, in absence of an appropriate request, to embody an additional definitive

or explanatory charge." *Sherrer* v. *Holliday,* 165 *Ga.* 413 (2) (141 S. E. 67) ; *Scott* v. *Wimberly,* 188 *Ga.* 148 (3 S. E. 2d, 71). Furthermore, no request was made; and in the absence of such, the omission to charge that circumstantial evidence alone might be sufficient to show insanity was not erroneous. See, in this connection, *Cowart* v. *Strickland,* 149 *Ga.* 397 (4) (100 S. E. 447, 7 A. L. R. 1110). It has been held many times that where a conviction depends solely on circumstantial evidence, the judge should, even without request, charge the rule on circumstantial evidence as stated in. the Code, § 38-109; but that question is not involved in the instant case, and it is not so contended. The rule to be applied is that where the judge charges correctly the general principles applicable to the issues, if more specific instructions are desired they should be requested. *Ford* v. *Ford,* 146 *Ga.* 164 (3) (91 S. E. 42); *Rountree* v. *Neely,* 147 *Ga.* 435 (94 S. E. 542); *Betts* v. *State,* 157 *Ga.* 844, 846 (122 S. E. 551); *Maner* v. *State,* 181 *Ga.* 254 (5) (181 S. E. 856); *Roberson* v. *State,* 190 *Ga.* 661 (2), 662 (10 S. E. 2d, 173).

We do not mean to say that the particular charge should have been given if it had been requested, for there may be other reasons why it was properly omitted. Compare *Long* v. *State,* 12 *Ga.* 293 (16), 323; *Tanner* v. *State,* 161 *Ga.* 193, 198 (130 S. E. 64); *Trustees of Jesse Parker Williams Hospital* v. *Nisbet,* 191 *Ga.* 821 (7), 847 (14 S. E. 2d, 64); *Lubeck* v. *Dotson,* 192 *Ga.* 258 (3), 263 (15 S. E. 2d, 205); *Stiles* v. *Shedden,* 2 *Ga. App.* 317 (58 S. E. 515). It is sufficient to say, and what we rule is, the omission was not error in the absence of a request.

■ The defense of insanity was urged under the general plea of not guilty, and no special plea of insanity at the time of the trial was filed. In the second special ground of the motion for new trial error was assigned on the refusal of the court to give the following charge, as duly requested in writing: "If you find the defendant not guilty because you believe she was insane at the time of the commission of the homicide, you would have a right to so state in your verdict; and in the event the verdict should be based on such ground and this is shown in the verdict itself, the defendant would then be committed to the State sanitarium, there to remain until discharged in manner prescribed by law." It is contended that under the evidence the jury would have been authorized to find the defendant not guilty, on the ground that she

was insane at the time of the homicide, and that in such case it would likewise have been proper, under the law, for them to show in their verdict that it was based on such finding of insanity. For these reasons it is insisted that the judge should have charged the jury that they had the right to return such a verdict, and that the defendant in that event would be committed to the State sanitarium, there to remain until discharged in the manner prescribed by law. It is further insisted that in the absence of such instruction the jury would necessarily realize that a verdict of not guilty would have the effect of giving the defendant complete freedom, whereas they might have found her not guilty on the ground of insanity if they had been informed that instead of gaining absolute freedom she would be committed to the State sanitarium. It is therefore insisted that the failure of the court to give the requested instruction deprived the defendant of a legal principle to which she was entitled, and was necessarily harmful.

The contention thus made was based upon a provision which is contained in the Code, § 27-1503, and which may be quoted in its order with two other sections, as follows:

"Whenever the plea of insanity is filed, it shall be the duty of the court to cause the issue on that plea to be first tried by a special jury, and if found to be true, the court shall order the defendant to be delivered to the superintendent of the Milledgeville State Hospital, there to remain until discharged in the manner prescribed by law." § 27-1502.

"When a person who has been acquitted of a capital crime, on the ground of insanity, is committed to the Milledgeville State Hospital, he shall not be discharged therefrom, except by special act of the legislature. If the crime is not capital, he shall be discharged by warrant or order from the Governor. If sentence is suspended on the ground of insanity, upon restoration to sanity the superintendent shall certify the fact to the presiding judge of the court where he was convicted." § 27-1503.

"No lunatic or person afflicted with insanity shall be tried, or put upon his trial, for any offense, during the time he is afflicted with such lunacy or insanity, which shall be tried in the manner hereinbefore pointed out where the plea of insanity at the time of trial is filed, and, on being found true, the prisoner shall be disposed of in like manner." § 27-1504.

All of these sections appear as a part of the Code relating to criminal procedure.

It is only the first sentence of § 27-1503 that is here invoked, and we are not concerned with the remainder of it in this case. The provision relied on was not contained in any Penal Code or shown as a part of any of the criminal law of this State until the Code of 1895, in the penal division of which it was inserted as § 952. Apparently it was based on no statute of the General Assembly, but was inserted by the codifiers. A similar provision did appear, however, in the Code of 1863, in the article relating to the management of the asylum and discharge of patients; and the same is true of each of the subsequent Codes, including that of 1933. Code of 1863, § 1314; 1868, § 1395; 1873, § 1374; 1882, § 1374; Civil 1895, § 1451; Civil 1910, § 1614; 1933, § 35-240. We find no statute from which the provision was first codified as a part of the Code of 1863, and even there it appears to have been inserted by the codifiers. *Brown* v. *Brown,* 184 *Ga.* 827, 830 (193 S. E. 754).

The provision as it thus appeared as a part of the law relating to the asylum, now the State Hospital, and not as any part of the law relating to criminal procedure, was apparently based on an assumption by the codifiers, and in turn by the General Assembly, that some such rule was in force as a part of the criminal law of this State. No such rule was in existence, however, and the mere assumption that it existed did not bring it into being. *Boykin* v. *Martocello,* 194 *Ga.* 867, 870 (22 S. E. 2d, 790).

In *Long* v. *State,* 38 *Ga.* 491 (7), 507, decided in 1868, it was shown that the provisions now contained in the Code, § 27-1502, supra, were designed to prevent a trial on the merits while the accused is insane, that the plea must allege insanity at the time of the trial, and that in the absence of such a plea the defendant is not entitled to the special trial provided for in that section. In reaching this conclusion the court also considered what is now § 27-1504, supra, and stated in effect that if no such plea is filed, the only issue as to insanity will be whether the defendant was insane at the commission of the act, and, if so, the verdict shall be not guilty. In the opinion, it was said:

"It seems to us both absurd and cruel to send a sane man to the lunatic asylum, and we can not think such was the intent of

the law makers. There may perhaps be a propriety in so confining one subject to fits of insanity. Such a person may fairly be considered dangerous to the community; but that one perfectly sane at the time of the trial, free from the insanity which has once made him irresponsible for his acts, should be condemned by the law to live among madmen, is to us so preposterous that we can not think such was the intention of the legislature."

In *Danforth* v. *State,* 75 *Ga.* 614 (3) (58 Am. R. 480), decided in 1886, it was held that under the law of this State insanity as a defense must be urged under the general plea of not guilty, and, if satisfactorily established, would finally acquit the defendant and discharge him. In the opinion it was stated that the section of the Code relating to the special plea applied only to mental derangement at the time of the trial, and that in no case could this special defense be made without an averment that such mental disease was in existence at that time. The court referred to the practice in England, and suggested need of legislation on the subject in this State. It may be that what is now § 27-1503, was placed in the Penal Code of 1895, § 952, in response to this suggestion. The section was not simply transposed from a different part of the Code, but was a substantial repetition or duplication, since the similar provision was allowed to remain in the Civil Code, and has continued to appear in the subsequent Codes, as shown above. We do not question that a change in the law might be effectuated in this manner; for it has been held more than once in this State that a mere transposition of a section of the Code may result in changing the law. *Sheffield* v. *Chancy,* 138 *Ga.* 677 (75 S. E. 1112); *Central of Georgia Railway Co.* v. *Wright,* 165 *Ga.* 631 (3) (142 S. E. 292), affirming 36 *Ga. App.* 386 (137 S. E. 95).

While it does not appear that this court has expressly construed section 27-1503, or determined what change, if any, was made in the law by adopting it as a part of the Penal Code of 1895, yet in 1911, after the adoption of that Code, it was held that the defense of insanity at the time of the alleged offense must be made out under the general plea of not guilty, and, if satisfactorily made out, would finally acquit the defendant. *Alford* v. *State,* 137 *Ga.* 458 (73 S. E. 375). On the general subject, see *Anderson* v. *State,* 42 *Ga.* 9 (2); *Carr* v. *State,* 96 *Ga.* 284 (22 S. E. 570);

*Baughn* v. *State,* 100 *Ga.* 554 (28 S. E. 68, 38 L. R. A. 577). For present' purposes, however, we assume that the General Assembly did intend to change the law in some respect by annexing the stated provision to the existing law· on criminal procedure, as in the Code of 1895; but even if such was the case, we are obliged to hold that no actual change was effectuated, for the reason that there was no sufficient expression of intention on the part of the lawmaking body. We have again a mere assumption, without a word of enactment as related to trial. No procedure was provided whereby a jury might express their finding in case they' should acquit the accused on the ground of insanity, and no authority whatever was conferred upon the court to detain the accused for any purpose after such acquittal. It was then and had for a long time been the law of this State, that on the trial of all criminal cases the jury should give a general verdict of guilty or not guilty (Code of 1863, § 4532; 1933, § 27-2301), and no addition to this rule was expressed or implied through the action of the General Assembly to which reference has just been made.

Section 27-1503 must therefore be held ineffectual as a provision for continued detention of one by whom, as in this case, no plea of insanity at the time of the trial was filed.

For the proposition that a law may not rest solely in the minds of the lawmakers, but must be made articulate in some legislative act, see *Walden* v. *Whigham,* 120 *Ga.* 646 (48 S. E. 159); *Cook* · v. *State,* 137 *Ga.* 486 (3) (73 S. E. 672); *Pickering* v. *Campbell,* 146 *Ga.* 636 (92 S. E. 74); *Green* v. *State Highway Board,* 172 *Ga.* 618 (158 S. E. 329); *Winslett* v. *Case-Fowler Lumber Co.,* 173 *Ga.* 539 (160 S. E. 384); *Botts* v. *Southeastern Pipe-Line Co.,* 190 *Ga.* 689, 707 (10 S. E. 2d, 375); 59 C. J. 601-605, §§ 160-161. It follows that the requested charge did not contain a correct statement of the law; and for this reason, regardless of others that have been urged, the judge properly refused to give such instruction to the jury.

■ We have carefully examined the evidence as to insanity, and can not say as a matter of law that the finding of the jury against such defense was unauthorized. The evidence supported the verdict, and the court did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur.*